Good morning, Your Honors, and may it please the Court. My name is Rosalyn Dillon, and I represent Plaintiff Appellant Aaron Eaton. I'd like to reserve three minutes for rebuttal. The Prison Litigation Reform Act requires only the exhaustion of administrative remedies that are available. But here, Mr. Eaton, a survivor of childhood sexual abuse who lost his chance at recourse when the prison confiscated his legal mail, was left with only two unworkable options. First, he could file his legal mail grievance when he already had four pending and have it rejected because he had violated the four grievance limit rule, or he could wait and file after one of his active grievances had been processed and have it rejected for being filed outside of the 14-day limit. Nobody would describe remedies as available where a prisoner has only an option between two ways of getting rejected. The District Court concluded otherwise because it believed there was a third option. It thought that Mr. Eaton could have withdrawn one of his active grievances to make way for his legal mail claim. Which would have had the consequence of waiving that claim, right? Yes. So basically, our argument is that even if he could, assuming that he could have withdrawn this claim, that nobody would describe remedies as available where a person has to face the difficult choice of sacrificing something else important. Here, the ability to proceed on the withdrawal, proceed in the administrative exhaustion system. Tell me if, and I'll be anxious to hear from the government in response to this, if this description of this case can be summarized by this. What the government is really saying to your client is, we took your legal mail when we shouldn't have, we kept it so long you couldn't sign up for a settlement that you may have been entitled to. And when you complained about it by filing your grievance, we told you you were over the limit and the only way to file the grievance to grieve the fact that the prison authorities kept their mail for so long and for no reason. After all, they opened the envelope and saw what was inside, correct? And now they say, sorry, you're over the limit. And the only way you can avoid the limit is by withdrawing a claim that you may feel is perfectly valid. And if you do that, the legal consequences, you've waived that claim. Do I have anything wrong? I think that's exactly right, Your Honor. And it is our position that this court starts with the plain text of the prison litigation. It sounds to me like the government has here, this court has on numerous occasions interpreted the word available in other statutory context. So it's not to put a person to a difficult choice. And the choice we have here is much more stark because the exhaustion provision acts as a gateway to the prison door. So when you tell a prisoner you have to withdraw a grievance in order to push another claim through, then you're basically saying you're giving up your right to pursue legal action on that case. Could the argument be made that your client actually did exhaust the administrative remedies, that he used all the remedies available to the end, and so therefore he did exhaust, and we don't even have to touch the question of availability? I think that's an interesting question. We've approached the case this way because he wasn't even able to get his grievance through the door at all. He was rebuffed at every attempt. So in that situation, we looked to the Supreme Court in Ross v. Blake, which says that And if you look at the ordinary meaning of the word available, it means capable of use for the accomplishment of some purpose. But is it a requirement that the remedies be adjudicated on the merits versus a procedural bar? I'm not sure that there's that sort of requirement. That just wasn't the way that we were viewing the case. Just because the door was slammed to him as soon as he tried to file his legal mail grievance, he had satisfied the exhaustion requirement because there were no available remedies. And I'd just like to note that if Oregon wants to maintain a limit on grievances, there's ways it can do so while keeping the administrative system available for other claims. Idaho maintains a three grievance limit, but it has an exception for claims that might be barred if the limit operated with the time frame to file a grievance in order to exclude a grievance entirely from the system. And Oregon could do something like that here. You could also envision a system where the Oregon Department of Corrections allowed a prisoner to queue grievances. So Mr. Eaton would be able to get his legal mail claim in the door in the 14 day window that he's required to. And then Oregon can process his pending grievances. And then once one has been processed, allow his legal mail claim through the door without just completely barring him. Well, speaking of door shut, is he beyond the time limits or beyond the pale to participate in the Boy Scouts sexual abuse settlement? Your Honor, so the allegations in his complaint are... You could start with the yes. Yes, sir. He lost his chance at joining the Boy Scouts lawsuit. That lawsuit is in settlement negotiations now. The inside of the mail that prison authorities opened, which had a stamp envelope to send it back, told the reader the deadline. I'm not sure that the envelope said the deadline in the form, but the First Amendment protects the free flow of information to prisoners, including legal mail. So it's not clear that they knew. I assume the prison officials read it because they ultimately determined it was perfectly proper legal mail and the inmate was entitled to receive it. Yes, sir. What I want to know is if someone reading that claim form or participation form or whatever it was, put the reader on notice that it required a reasonably prompt response. That letter is not in the record, but I'll just note that the First Amendment claim that all of this goes towards was decided at the motion to dismiss stage. So we must review all facts in the record in Mr. Eaton's favor. And I think a reasonable inference from what he's alleged is that it was clear in the envelope that he needed to respond within X amount of time to join the Boy Scouts of America lawsuit. There's even an affidavit from another prisoner who was actually to receive his legal mail and he got the stamped envelope and he is now a party to the Boy Scouts of America lawsuit. The district judge here seems to suggest that in analyzing the four grievance situation here that it's appropriate to look at those grievances and determine some, all grievances are not created equal. That suggests that, well, two of these grievances had to do with mold issues, I think, and sort of suggests that because of the nature of those grievances, withdrawing a grievance is an available and appropriate way for your client to proceed. Does it really matter? Is it appropriate, is my question, to look at the nature of the four pending grievances when you're determining whether or not withdrawal is an option? We don't believe so in this case specifically, and I'll expand a little bit on that. The Supreme Court in Woodford v. Noe was concerned with allowing prisoners to, quote, bypass deliberately the administrative process by flouting the agency's procedural rules. So if the defendants had inserted anything into the record below to show that Mr. Eaton had deliberately flouted the system by pushing through a bunch of frivolous grievances, then perhaps we'd have a different case. There is, though, a carve-out, as I understand it, in the Oregon law for certain kinds of grievances, safety, abuse, those kind of things. So they've recognized there's certain grievances that don't count for the, under the four grievance rule. Doesn't that sort of suggest that if you don't fall into that category, these grievances are of a nature that, you know, perhaps they should be subject to withdrawal? I don't think so, Your Honor. So the Supreme to have someone withdraw a constitutional right in order to assert another, and it doesn't make any mention about emergencies or things of that nature. So the fact that Oregon has a carve-out to allow certain claims through still would leave Mr. Eaton in the position if one of those claims was about a religious diet, which one of them was, to determine that maybe that was not as important to him as his legal malclaim, and it still would have forced him to forego his constitutional right to pursue a federal lawsuit on that claim at the expense of getting his legal malclaim through the door. Effectively, what you're telling me, if I'm hearing you right, is the district judge shouldn't, bringing up the nature of these grievances and saying, well, two of them are about mold, you don't even think he should have gone there, right? I don't think he should have gone there in this case. And what I'll say about the mold grievances is the Oregon Department of Corrections rules actually requires a prisoner to file a different grievance about any issue that impacts them in the facility. And again, because of the stage of this litigation, at summary judgment, we must take all inferences in Mr. Eaton's favor and assume that he filed mold grievances about two separate issues. We also know that those mold grievances were not frivolous. He proceeded to court on a mold claim, and it passed the motion to dismiss stage, at which point it survived a frivolity determination. So the idea that Mr. Eaton was jamming up the system with frivolous claims is simply not supported by the record. Defendants haven't even introduced into the record any of these, any of his grievances at all, except for the operative grievance in the complaint. And so, and they haven't pointed to any of the grievances he's filed over the years as a misuse of the system in any way. Okay, so what kind of rule would you want us to craft? I mean, so the Supreme Court has said that prisons are allowed to have critical procedural rules, and allowing unlimited grievances seems like, or limiting grievances seems like a reasonable way to manage these. What kind of rule would we have to craft here to say that they violated or didn't violate the law? So I'd like to start with the rule, and then I'd like to explain why it's the function of the grievance rule as opposed to actually the function of the grievance limit that matters, not actually the limit. So we assert that an available remedy does not require a difficult choice. So there's no available remedy where a prisoner is required to make a choice between sacrificing a grievance in order to get another one in the door. And I note that that's specifically so where there's no way to get the other grievance back into the system. But to your point about the number of grievances and potentially prisons might be including California, and their grievance systems have not descended into any sort of chaos. But like I said, it's not the sheer number of grievances that matters, it's how the rule operates. And here, the way that the grievance rule is operated is to keep, it's to have a really short 14-day deadline in which to file a grievance, and then a really strict four grievance limit. And as I mentioned, Idaho has figured out a way to still make remedies available for the next grievance. I feel like your position is that state authorities comfortably within the confines of the U.S. Constitution can establish reasonable rules for grievances to be processed within a correctional institution, so long as the rule in operation doesn't preclude an inmate from pursuing a claim at all? Yes, Your Honor. I couldn't have said it better myself. And if there's no further questions, I'll reserve. I have one question. Great. How important to you in this case is what I understand to be that the prison authorities were outside of their own regulations in processing. They were late, as I understand it, in one of the grievances. Is that important in your argument? Are you saying even if they hadn't been late, we should come out the same way? The point about defendants sitting on his grievances for many months longer than contemplated by the rules just serves to show that he couldn't have actually withdrawn a grievance and then gotten one back into the system in the time frame. That's because the authorities were late in processing one of the grievances? Yes. They were sitting on them for many months past the time frame contemplated, and there's some flexibility within those deadlines. But defendants even admit that there were extraordinary delays in processing his grievances. And so that, coupled with the grievance limit, coupled with the 14-day window in which to file a grievance, operated here to exclude his claim completely from administrative review. And the purpose of the PLRA is so that prisons can deal with claims internally before being hailed into federal court. And this rule just excluded a claim completely. There's no additional time for review or more careful review of the claim. It just operates to make sure that claims don't get reviewed at all. Thank you. I'd like to reserve the remainder of my time. May it please the court. Pinesh Shah for the Oregon Department of Corrections asking the court to affirm the judgment of dismissal. So plaintiff, in our view, asked this court to As the Supreme Court explained in Porter and Booth, the PLRA's exhaustion requirement replaced a previous statute that contemplated exhaustion only when administrative remedies were plain, speedy, and effective under federally promulgated minimum acceptable standards. Porter and Booth explained that in light of that repeal, administrative remedies need not meet any federally mandated standards. So in our view, the upshot of those cases is that plaintiff cannot use the PLRA to ask this court or any federal court to review particular administrative standards or procedures under a fairness standard or any other sort of federally promulgated standard. And in our view, nothing about Ross overruled that basic principle. Ross suggested the PLRA's use of the word available allows federal courts to excuse a failure to exhaust in some limited circumstances. But the court there did not intend to overrule Booth or Porter, which it expressly relied upon. Instead, what Ross did was allow a federal court to excuse a failure to exhaust. When state officials fail to follow their own rules, or fail to make rules accessible, or fail to make a process accessible to a plaintiff. And that sort of explanation underlies all of the cases that plaintiff relies upon, all the cases that this court has decided, where prison officials either fail to make forms available, fail to make manuals available, fail to follow their own rules, or effectively made their process, sort of corrupted their process in some way. Well, I'd like to hear your response to the question I asked opposing counsel. And that is, I can repeat it if you'd like, but isn't what the prison is saying to Aaron Eaton, we confiscated your legal mail when we kept it so long that the content of the legal mail, which would have allowed him to participate in the settlement. And when you want to file a grievance about it, about our actions in that regard, we told you that you're over the limit. And if you want to pursue correcting a course that was wrong from the get-go on the part of the prison officials, you have to withdraw one of your prior complaints, so you're under the four grievance limit. Is there anything wrong about what I just described? That is not inaccurate, Your Honor. I would like to maybe offer some further explanation. Sure, but it's not inaccurate. It is not inaccurate. Do you know what a catch-22 is? I have read Joseph Heller, Yes, Your Honor. Tell me why that's not a catch-22. Whether or not it's a catch-22 is irrelevant because this court under the PLRA is not entitled to, or the PLRA doesn't allow this court to review administrative procedures for fairness or any federal standard. Whether there's a constitutional problem with that is a separate question. This case presents a purely statutory claim. There's no constitutional authority relied upon. And so the only question is whether Congress, in enacting the PLRA, allows this court or any federal court to review our administrative regulations. And it's our position that the PLRA does not allow this court to do that. Thankfully, within the confines of the PLRA, prison officials could construct a grievance procedure that, in operation, denies the prisoner the right to effectively pursue a grievance. Is that correct? No, not entirely. No, Your Honor. It allows the prison to do that if it's intended to serve penological interests, as we say it is here. Penological interest was pursued by opening his legal mail, reading it, determining that it really was legal mail, and then waiting for, what, months to return it to the prisoner? Your Honor, I was saying whether a penological interest is served by the For Grievance Rule, not by the actions underlying the claim. A penological interest is served by the For Active Grievance Rule because it serves the same type of penological interest that the PLRA itself serves. So, in your mind, that's okay? It is okay under the PLRA. Congress has said that we, corrections officials, can make these sorts of rules, and you, Your Honor, these federal courts cannot review those under any federal standard. What if a prison had a rule that said you can't file a grievance? Well, then it wouldn't be available, or that would be a dead end under Ross, or be a machination under Ross, and that also wouldn't serve a valid penological interest. Why isn't this a dead end under Ross? Because under Ross, as I read Ross, a dead end is a situation, like Judge Hawkins just suggested, where there really isn't a process, where, as a systemic matter, there's no way to actually get any sort of relief. I mean, you know, in Woodford, we know that a time bar does not make, when a claim is time barred, it's not a dead end. And in our view, that means procedural defects do not make administrative relief unavailable or a dead end. And under Porter and Booth, I don't think that this Court can look behind the nature of the procedural defect to say, well, this procedural defect is okay under the Constitution or under some federal minimal standard. In this case, there is no procedural defect. The prisoner complied with all the rules. The only difference here is that the prison took much longer on the three other or the four other grievances that he filed. No, Your Honor, there is a procedural defect. What was that? He had – he filed another grievance when there were four grievances active. Well, the only reason why there were four other grievances active is because the person took so long with the other grievances. That's not his fault. And that may justify some sort of exception to exhaustion with regard to those other claims. But on this claim, we followed our own rule with regard to this claim. But he also complied with all the rules in this claim. It is possible for him to comply with all of the rules and still have a procedurally defaulted claim. Seems like then it's just unavailable to him. That is not the way that we believe the Supreme Court interpreted the Congress' use of the word available in the PLRA. You know, it might be that there's a situation where the way that Congress intended the word available, as interpreted in Ross v. Blake and Porter and Booth, might create constitutional problems. And in that situation, a plaintiff might be able to raise an as-applied constitutional challenge to the PLRA and say, when you apply the PLRA to me in these circumstances and require me to exhaust in these circumstances, that is unconstitutional. That case may arise. That is not this case because that is not the challenge presented here. So suppose we were to remand to the district court and instruct the district court to permit Mr. Eaton to amend his complaint and assert a constitutional claim. And the case came back up to our panel. What would you say? I assume Your Honor is not asking whether I take a position of whether it's permissible for this court to do that. You're just asking sort of as a pure hypothetical? Yeah. What would I say? I would say that in that situation, he would have the burden of showing that, in fact, he gave up or he was in a position of having to give up viable constitutional claims. And if that were the case, that might present a constitutional problem, though I'm not sure under what constitutional provision that would be a problem because— Sound in religion? I'm seeing a nod from your opponent. I'm sorry, say again? Didn't it sound in religion? Perhaps the underlying claim did, but— Take it that Aaron Eaton is Jewish? I don't know the answer to that, Your Honor. I'm seeing a nod on that also. And one of his complaints was about how he's being treated as a member of the Jewish faith. You couldn't construct a constitutional claim based on that? What I'm suggesting is he needs to make a constitutional challenge to the PLRA. Here, the PLRA exhaustion requirement bars him from court. And what he would need to do is say, when the PLRA is used in that way, the PLRA becomes unconstitutional as applied to him. Not that some other actions by Oregon Department of Corrections violate his constitutional rights, but rather that when you apply the PLRA to him in these circumstances, and he can show that he had four active complaints, all four of them presented viable constitutional claims, then perhaps, yes, there would be a problem. Again, I'm not sure exactly under what constitutional provision that would be a problem. I think that would require some development. I know that the U.S. Supreme Court has generally said that citizens in state custody have different types of rights, and there's a bit more balancing that goes on, and when the state impairs those rights in the service of some valid penological interest, that can be permissible in a way that it isn't elsewhere. And so I don't know that I'm prepared to answer that question concretely, Your Honor, but I will say it would be a close and difficult question that would require a good deal more briefing. I understand your argument. But under the constitutional avoidance canon, I mean, why should we even go there? We could just say it doesn't fit the definition of availability. I think that if this Court were writing on a clean slate, perhaps that would be an available avenue. But as I read the Supreme Court's precedents in Ross and Porter and Booth, I don't think that that's possible. I think that the Supreme Court has already sort of read the PLRA as having sort of a muscular exhaustion requirement in which federal courts don't get to do the thing, perform the sort of review that Plaintiff is asking this Court to do. And, you know, it may be that when Congress did that, withdrew that sort of review from federal courts, it created a problem. I'm not saying that it did, but perhaps it did. And that would be a different argument presented in a different case. So I guess the bottom line for you is that the fact that he has to withdraw one of his prior complaints means that remedies are still, I mean, the grievances are still available to him, even if he has to withdraw a previous one. Right. It's no different than a time bar in our view. You know, it's a procedural barrier, but sometimes even an irremediable procedural barrier doesn't mean that the claim is unavailable. Like what happened if on the same day there were five pieces of mail taken from him? And so he basically has to just excuse one, lose one, right? I think that would present a difficult question. And I think the right answer in that situation would be to say the PLRA, as applied to him in that situation, may be unconstitutional. But I don't think that the statute. Well, why not just say unavailable? Because I don't think the PLRA's use of unavailable, as interpreted by the Supreme Court, allows that. So say he's got nothing on day one. The prison takes away five legal mails from him. He has five grievances. He just has to, and he can't use one. He can't file one grievance. So how is it available? Again, Your Honor, the way that I think the Supreme Court has interpreted the word available, that is not available. I mean, it is available, I should say. I would hope in that hypothetical circumstance that what the warden would do would be to call you. I sure hope so, Your Honor. And I would try to find a way to prevent that case from getting to this court. Yeah. Thank you. You know, and I'll just say that we, the Oregon Department of Corrections, really, we take seriously our obligation to timely and effectively resolve these grievances. I mean, that's what Ross contemplated that we would do. Take seriously. Yes. Yes. And we think that my client, and I think that... Acting on your advice. Not individually my advice, my office advice, yes, Your Honor. Believe that this is permissible under the PLRA, and that particularly if we process these complaints in a timely fashion. And we have certainly endeavored to do that. I'll note that the four complaints, the four active complaints at issue here arose between March and June of 2020. I think we all know what was happening around then. So, you know, it doesn't excuse anything. It just provides a little bit of context. And, you know, again, we think this is permissible. And we think this is how we can do a better job of addressing these complaints, these grievances, and creating the kind of record that for federal courts that the PLRA wants from the exhaustion requirement. If we're mistaken about that, and this court tells us that, then we'll try to find a different way to discharge our obligations. So are you suggesting the way to rectify the situation from your perspective is you go to the Oregon legislature and they have them say the four grievance rule or whatever is if one of them is not timely adjudicated by the prison authorities, you get a fifth or you get it. That's the avenue you think that ought to be taken rather than deciding this case. I'm not suggesting you have a legislative proposal, but I'm saying that to the extent there needs to be tweaking under the rule here, the four grievance rule, it is not for the court to adjust the rule. To the extent that there's tweaking that needs to be done, the state agency that promulgated the rule should be tweaking it, should be tweaking that rule. Yes, Your Honor. But I don't think that this court is in a—I don't think the PLRA allows this court to tell us what to do with regards to that rule. I understand. And so I don't think I have anything further to add unless the court has questions. Thank you for coming. Thank you. We ask you to affirm. Thank you, Your Honors. I'd just like to quickly address a couple points. First, despite defendant's argument to the contrary, Ross v. Blake did not list only three scenarios in which remedies are unavailable. And this court in Andres v. Marshall noted that when they called the Ross examples a quote, non-exhaustive list. Ross was simply interpreting the statute of the PLRA, the exhaustion provision, and interpreting the word available, and it interpreted available within the ordinary meaning of the text, and that is capable of use. I'd also like to respond briefly to the argument that when a prisoner procedurally introduces like a procedural defect into the system, that that is not—that means that he has not satisfied the exhaustion requirement. Woodford v. Ngo, again, contemplated procedural rules that were within the control of a prisoner. It was worried about prisoners being able to bypass deliberately the system by flouting the procedural rules. A procedural rule is something that's within the control of the prisoner, like a deadline or filing on the right form. No one calls a thing a procedural rule if it's something that requires a prisoner to make a sacrifice or if it's something that's impossible for a prisoner to comply with. And I'd also just say that the question that this court is called to answer is not about the constitutionality of the PLRA. You're simply called to interpret the meaning of the exhaustion provision, which says administrative remedies must be available. You don't need to strike down the PLRA. You just need to interpret the word, and if there's any doubt as to the plain meaning of the word, as Judge Bumate pointed out, the constitutional canon of constitutional avoidance would solve the issue here. So under the PLRA's plain meaning, and the defendants concede, an available remedy does not require a difficult choice between rights. So there's no available remedy where a prison requires a prisoner to make a difficult choice by sacrificing a pending grievance. We ask this court to reverse the district court decision concluding otherwise. Thank you. Thank you, counsel. This case will be submitted, and I believe we are adjourned for today. The session now stands adjourned.
judges: HAWKINS, BUMATAY, Seeborg